**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA,

v. Criminal No. 3:15CR33

DWAYNE LAMON SMITH,

Petitioner.

**MEMORANDUM OPINION**

Dwayne Lamon Smith, a federal inmate proceeding pro se, seeks leave to amend a 28 U.S.C. § 2255 motion. For the reasons stated below, leave to amend will be denied.

## I. PROCEDURAL HISTORY

On March 3, 2015, a grand jury indicted Smith for possession of heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) (Count One); and, for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two). (ECF No. 10.)

On April 28, 2015, Smith entered guilty pleas to Counts One and Two. (ECF No. 13.) Smith and the Government stipulated to the following:

> 1. On or about September 25, 2014, in the Eastern District of Virginia and within the jurisdiction of this Court, the Defendant, DWAYNE LAMON SMITH, a.k.a "Dee We," did knowingly, and intentionally, and unlawfully, possess with the intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

841(a)(1) and 841(b)(1)(B)(i); and he did possess firearms and ammunition after having been convicted of a crime punishable by a term of imprisonment exceeding one year in violation of Title 18, United States Code, Section 922(g)(1).

2. In the summer of 2014, law enforcement officers became aware of the drug trafficking activities involving DWAYNE LAMON SMITH and others. According to information received, SMITH was distributing heroin in Henrico County, Virginia and elsewhere within the jurisdiction of this Court.

3. On September 25, 2014, a state search warrant was executed for Smith's residence. Approximately one hour prior to the search, SMITH had been observed by law enforcement leaving his residence.

4. During the execution of the search warrant, the following firearms were recovered: a Ruger 9mm handgun bearing serial number 306-23937; a Taurus .45 caliber handgun bearing serial number NAU97630; a Derringer .38 caliber handgun bearing serial number N209431; and an Armalite 5.56 mm rifle bearing serial number US117354. In addition to these firearms, assorted ammunition was also recovered.

5. Law enforcement officers also seized a mixture and substances containing a detectable amount of heroin from SMITH's residence. The suspected heroin was sent to the Virginia Department of Forensic Science for analysis, which confirmed that 175.31 grams of heroin had been recovered.

6. Law enforcement officers also seized an additional $1000 in United States currency from the residence, and $1,170 in United States currency from the defendant's person.

7. The parties stipulate and agree that the four firearms referenced in paragraph four above, and in Count Two of the Criminal Indictment are firearms within the meaning of the law in that each is designed to expel a projectile by means of an explosive. The parties further agree that each of these firearms and the assorted ammunition were manufactured outside of the Commonwealth of Virginia, and as such, traveled in interstate and/or foreign commerce.

8. SMITH was convicted of a crime punishable by a term of incarceration exceeding one year (a felony) prior to September 25, 2015, and his right to possess a firearm or ammunition had not been restored.

> 9. The parties stipulate and agree that SMITH possessed the heroin that was recovered from his residence with the intent to distribute it.
>
> 10. This Revised Statement of Facts includes those facts necessary to support a guilty plea to Count One and Count Two of the Criminal Indictment. It does not include each and every fact known to the defendant or the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.
>
> 11. The actions of the defendant as recounted herein were in all respects knowing and deliberate, and were not committed by accident, mistake, or other innocent reason.

(ECF No. 15, at 1-3.)[1] Smith further stipulated that had this matter proceeded to trial, the Government could have proven the above facts beyond a reasonable doubt. (Id. at 1.)

A Presentence Investigation Report ("PSR") was generated by the probation officer. (ECF No. 23.) The PSR outlined Smith's lengthy criminal history, which began when he was a juvenile, and includes multiple adult felony convictions at both the state and federal levels. (Id. ¶¶ 25-45.) Among other things, Smith had been convicted in this Court for possession of five grams or more of cocaine base with intent to distribute, and for possession of a firearm with an obliterated serial number. (Id. ¶ 44.) He was also convicted in the Circuit Court for Henrico County of possession of heroin with the intent to distribute. (Id. ¶ 45.)

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the record. The Court corrects the spelling, punctuation, and capitalization, and removes emphasis in the quotations from the parties' submissions.

Based on his criminal history, the PSR classified Smith as a career offender. (Id. ¶¶ 21, 49.) Smith received a Total Offense Level of 31, a Criminal History Category of VI, and an advisory guidelines range of 188-235 months of incarceration on Count One, and, 120 months of incarceration on Count Two. (Id. ¶¶ 86-87.)

On July 16, 2015, the Court entered judgment against Smith and sentenced him to 188 months of incarceration on Count One, and 120 months of incarceration on Count Two, with sentences to run concurrently. (ECF No. 30, at 1-2.) Smith did not appeal.

On June 26, 2017, Smith filed a 28 U.S.C. § 2255 motion ("§ 2255 Motion," ECF No. 33), in which he challenged his career offender classification. (Id. at 15.) Respondent moved to dismiss Smith's § 2255 Motion as untimely. (ECF No. 35.)

While the Court was considering his § 2255 Motion, Smith submitted a series of related documents seeking leave to add claims for relief under Rehaif v. United States, 139 S. Ct. 2191 (2019). ("First Request to Amend," ECF Nos. 41-43.) Smith also requested that counsel be appointed to assist him. (ECF No. 42, at 1.) Respondent did not address these requests.

By Memorandum Order and Opinion entered on September 16, 2020, the Court dismissed Smith's § 2255 Motion as barred by the statute of limitations. (ECF Nos. 48, 49.) At that time, the Court directed Respondent to submit a response addressing Smith's First Request to Amend. (Id.)

The Government complied with the Court's directive and filed a Motion to Expand the Record (ECF No. 50), as well as brief in opposition to Smith's First Request to Amend (ECF No. 51). The Government argues that the Court should deny Smith's Rehaif claim because it is procedurally defaulted. (ECF No. 51, at 1.)

Smith subsequently filed another document that he called PETITIONER MOTION TO AMEND PETITIONER SUPPLEMENTAL PLEADINGS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 15(C) WHERE THE END OF JUSTICE REQUIRE IT ("Second Request to Amend," ECF No. 56). In his Second Request to Amend, Smith seeks to add claims based on Rehaif that he was "wrongly convicted," and that he is "actually innocent" of Count Two. (Id. at 2-3.)

## II. ANALYSIS

### A. Leave to Amend

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). A proposed amendment is futile when it "is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (citing Davis v. Piper Aircraft Corp., 615 F.2d 616, 613 (4th Cir. 1980); Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 695

(8th Cir. 1981)). For the reasons stated below, amending Smith's § 2255 Motion at this juncture would be futile.[2]

**1. Futility of the First Request to Amend: The Structural Error Theory**

In the First Request to Amend, Smith seeks leave to add claims for relief based on Rehaif v. United States, 139 S. Ct. 2191 (2019). Namely, Smith asserts that the Indictment suffers from a "structural error" because it failed to allege that he knew that he was a felon, and that the Government otherwise failed to apprise him of this element of Count Two. (ECF No. 43, at 2-3.)

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. A separate provision, 18 U.S.C. § 924(a)(2), states that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to ten years. In Rehaif, the Supreme Court determined that § 922(g) does not criminalize a defendant's "innocent mistake" and therefore, a conviction under § 922(g) requires "knowledge of [the]

[2] As an initial matter, Smith fails to explain, and the Court fails to discern, why Smith should be allowed to amend his § 2255 Motion, which was untimely and not properly before the Court in the first instance. See United States v. Harris, No. 3:15cr170(DJN), 2021 WL 1823109, at *4 (E.D. Va. May 6, 2021) (questioning whether prisoner could amend untimely § 2255 motion). However, even if the Court were to assume, without deciding, that such an amendment is possible in theory, Smith has nevertheless, failed to show that amendment is warranted in this instance.

status" that renders firearm possession unlawful.[3] 139 S. Ct. at 2197. Thus, Rehaif held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200 (emphasis added).[4]

As an initial matter, Smith asserts that the Government's failure to allege his knowledge of his felon-status in the Indictment constitutes "structural error." (ECF No. 43, at 3.) This is simply incorrect. Greer v. United States, 141 S. Ct. 2090,

[3] Rehaif was convicted of being an alien unlawfully in the United States in possession of a firearm. 139 S. Ct. at 2194. At trial, Rehaif objected to the jury instruction "that the 'United States is not required to prove' that Rehaif 'knew he was illegally or unlawfully in the United States,'" at the time he possessed the firearm. Id. (citation omitted). The district court overruled the objection and Rehaif was convicted. Id. The Court of Appeals affirmed the conviction. Id. at 2195. The Supreme Court reversed, holding that the evidence "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." Id. at 2194.

[4] In Rehaif, the Supreme Court addressed "what it means for a defendant to know he has 'violate[d]' 922(g)." 139 S. Ct. 2195. The Supreme Court set forth four elements that make possession of a firearm or ammunition unlawful: "(1) a status element (in this case, [being a felon with a sentence of imprisonment of more than one year]); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." Id. at 2195-96. Only element (1) is at issue in the present case: whether Smith was aware that he was a felon with a sentence of more than a year at the time he possessed the firearm.

2099-2100 (2021) (rejecting argument that Rehaif errors are "'structural' and require automatic vacatur in every case").[5]

In Greer, the Supreme Court considered whether "discrete defects in the criminal process-such as the omission of a single element from jury instructors or the omission of a required warning from a Rule 11 plea colloquy" constituted structural error under Rehaif. Id. at 2099-2100. In concluding that they do not, the Supreme Court held that "Rehaif errors fit comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction.'" Id. at 2100 (quoting Arizona v. Fulminante, 499 U.S. 279, 306 (1991)); see also United States v. Medley, No. 18-4789, 2021 WL 8362326, at *1 (4th Cir. Oct. 6, 2021) (en banc) (reversing panel opinion "that Rehaif errors affecting appellant's indictment . . . violated his substantive rights" and concluding, based upon Greer, that "appellant is not entitled to plain-error relief for his unpreserved Rehaif claim"), rev'g, 972 F.3d 399 (4th Cir. 2020). Thus, it is clear that any Rehaif error related to the Indictment or the plea colloquy is not "structural." Therefore, Smith's "structural error" theory fails as a matter of law and an amendment based on that theory would be futile.

[5] "Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." Greer, 141 S. Ct. at 2100. They are very rare, having only been found in a "very limited class of cases." Id. at 2099.

**2. Futility of the First Request to Amend: Smith's Rehaif Claims are Procedurally Defaulted**

The Government correctly argues that Smith's Rehaif claims are procedurally defaulted. (ECF No. 51, at 1.) Because Smith could have raised, but failed to raise, his Rehaif claims on direct review, absent a showing of cause and prejudice or actual innocence, these claims are barred from review here. See Bousley v. United States, 523 U.S. 614, 622-23 (1998). In this instance, the Court need not determine whether Smith has shown cause, because he clearly suffered no actual prejudice. See United States v. Frady, 456 U.S. 152, 167 (1982).

In order to demonstrate prejudice, Smith must show "a reasonable probability that, but for [the alleged Rehaif] errors, he would have not pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Greer, 141 S. Ct. at 2098. Smith does not argue that, but for the alleged Rehaif errors, he would have pled not guilty and insisted on proceeding to trial. Rather, he merely questions the sufficiency of the Indictment and the Government's conduct. For this reason alone, Smith has failed to meet his burden of establishing actual prejudice. See Greer, 141 S. Ct. at 2097-98, 2100.

Nowhere in his submissions does Smith allege that he was unaware of the fact that he was a felon. Cf. Greer, 141 S. Ct. at 2100 ("In felon-in-possession cases, a Rehaif error is not a basis

for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon."). To the contrary, ample evidence shows that Smith knew of his felon status on the date in question.[6]

Prior to the present offense, Smith had been convicted on more than one occasion of multiple felonies at both the state and federal levels and had received multiple sentences in excess of one year. (See ECF No. 23 ¶¶ 25-45.) In 2002, Smith was convicted in this Court of possession of more than five grams of cocaine base with intent to distribute, and possession of a firearm with an obliterated serial number. (Id. ¶ 44.) He was sentenced to 110 months of incarceration on the drug conviction, and 60 months of incarceration on the firearms conviction. (Id.) Following his release from federal prison in 2010, Smith was placed on supervised release. (Id.) Shortly thereafter, in 2011, he was convicted in the Circuit Court for Henrico County for possession of heroin with

[6] As the Court inferred in Rehaif, the Government's duty to prove a defendant's knowledge of his status is hardly "burdensome," because "knowledge [of status] can be inferred from circumstantial evidence." 139 S. Ct. at 2198 (quoting Staples v. United States, 511 U.S. 600, 615 n.11 (1994)). Indeed, "[d]emonstrating prejudice under Rehaif will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew." United States v. Lavalais, 960 F.3d 180, 184 (5th Cir. 2020), cert. denied, 141 S. Ct. 2807 (2021). As discussed herein, the Government could easily show that Smith knew his felon status on the date in question.

the intent to distribute.  (Id. ¶ 45.)  There, Smith received a sentence of 10 years of incarceration, with 9 years, 3 months suspended for a period of 10 years.  (Id.)  Following his state court conviction, Smith was promptly returned to this Court, where he was found guilty of a supervised release violation and sentenced to an additional 24 months of incarceration.  (Id. ¶ 44.)  Further, Smith was still under his suspended sentence from the Circuit Court for Henrico County when the events underlying Count Two took place. (Id. ¶ 45.)

Based on the forgoing facts, Smith clearly knew he was a felon at the time that the events giving rise to Count Two occurred. See United States v. Caldwell, 7 F.4th 191, 213 (4th Cir. 2021) (concluding that it is "virtually impossible to believe [petitioner] did not know he had been convicted of crimes punishable by" more than a year in prison when he "served sentences longer than a year").  Moreover, the record lacks any evidence suggesting that Smith would not have pled guilty if he had known that such proof was required.[7]

---

[7] To the contrary, Smith received several significant benefits by pleading guilty that he otherwise would not have received. Smith's offence level was reduced by three points due to his acceptance of responsibility.  (See ECF No. 23 ¶¶ 22, 23.)  This resulted in his Total Offense Level being reduced from 34 to 31 (Id. ¶¶ 21-24), which, in turn lowered his guidelines range. Further, the Court sentenced Smith at the low-end of the guidelines.

Simply put, had Smith proceeded to trial, he would have lost the benefits he obtained by pleading guilty and would have received a much harsher sentence. Accordingly, no reasonable defendant in Smith's position would have insisted on proceeding to trial.[8]

Therefore, Smith cannot show any actual prejudice. This same information also dispels any suggestion that Smith's actual innocence could excuse his default. Indeed, Smith's guilt is quite clear from the record. Thus, even if leave to amend were granted, these claims would be defaulted and dismissed. Accordingly, because leave to amend would be futile, the First Request to Amend (ECF Nos. 41, 42, 43) will be denied.[9]

---

[8] In what can only be described as a case of gilding a lily, the Government's has submitted probation documents signed by Smith indicating that it could prove not only that Smith knew his felony status, but also that he was prohibited from possessing a firearm on the date in question because he had been convicted of a felony. (See ECF Nos. 50-2 (Notice of Firearm Prohibition), 50-4 (Conditions of Probation Supervision).). While these documents are not necessary to resolve the issue at hand, see United States v. Singh, 979 F.3d 697, 727 (9th Cir. 2020) (finding that Rehaif does not require the Government to "also prove the defendant knew his or her status prohibited firearm ownership or possession"), they certainly illustrate the strength of the Government's case and the certainty of Smith's conviction.

[9] Even if Smith had not defaulted these proposed claims, he would not necessarily be entitled to relief. As discussed above, Smith has not stated a claim for relief that is plausible on its face. Cf. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Moreover, it has long been held that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Brady v. United States, 397 U.S. 742, 757 (1970) (affirming guilty plea despite subsequent change in law). Indeed, "[t]he fact that [Smith] did not anticipate [Rehaif] does

**2. Second Request to Amend**

In the Second Motion to Amend, Smith claims that he was "wrongfully convicted" of Count Two, and that he is "actual[ly] innocent." (ECF No. 56, at 2-3.) It appears that Smith is attempting to raise a stand-alone claim of actual innocence.

As an initial matter, "[t]he Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence." Lund v. United States, 913 F.3d 665, 668 (7th Cir. 2019) (quoting Gladney v. Pollard, 799 F.3d 889, 895 (7th Cir. 2015)). In the usual case, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations. McQuiggin v. Perkins, 569 U.S. 383. 386 (2013).[10] The Court declines the invitation to create a stand-alone claim of actual innocence. If that is to be done, it is for the Supreme Court of the United States or Congress to do.

Even if there were a stand-alone claim of actual innocence (a position that the Court declines to adopt here), Smith would be

---

not impugn the truth or reliability of his plea," nor does it permit him "to disown his solemn admissions in open court that he committed the act with which he [was] charged." Id. The Court need not consider this issue further, however, because these claims are barred from review.

[10] "[I]t is 'doubtful' that a petitioner's actual innocence claim and claim for relief on the merits can be the same." Lund, 913 F.3d at 668 (quoting Perrone v. United States, 889 F.3d 898, 903 (7th Cir. 2018)).

required to demonstrate his "factual innocence, not mere legal insufficiency of his conviction." Bousley, 523 U.S. at 623-24 (citation omitted); United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1992) (indicating that a petitioner must establish "actual factual innocence"). Here, Smith's argument relates solely to what he perceives to be the legal insufficiency of his conviction in Count Two. Nothing in the record would permit a finding of factual innocence.

Indeed, assuming that a stand-alone claim of actual innocence could be brought, Smith's claim would ultimately fail because he has failed to point to any evidence, new or otherwise, which demonstrates that he is actually factually innocent of Count Two. Accordingly, because leave to amend would be futile, the Second Request to Amend (ECF No. 56) will be denied.

**B. Appointment of Counsel**

Finally, Smith has requested that counsel be appointed to assist him. No constitutional right to court-appointed counsel exists in post-conviction proceedings. Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997). The Court, however, may appoint counsel to a financially eligible person if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). For example, appointment of counsel for an indigent petitioner is appropriate in a 28 U.S.C. § 2255 action when necessary for utilization of discovery procedures or when an evidentiary hearing is required. See Rules

Governing Section 2255 Proceedings for the U.S. District Courts, Rules 6(a) and 8(c). Upon review of Smith's motion, the Court concludes that the issues in this matter are not complex, and the interests of justice do not require the appointment of counsel. Accordingly, Smith's request for the appointment of counsel (ECF No. 42) will be denied.

## III. CONCLUSION

Smith's First Request to Amend (ECF Nos. 41, 42, 43) and his Second Request to Amend (ECF No. 56) will be denied. Smith's request for counsel (ECF No. 42) will be denied. Smith's Motions for an Extension of Time (ECF Nos. 52, 55) will be granted to the extent that his Second Motion to Amend (ECF No. 56) will be deemed timely filed. The Motion to Expand the Record (ECF No. 50) will be granted.[11] The action will be dismissed.

An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could

---

[11] "The district court may expand the record to include letters, documents, and affidavits." United States v. Rashaad, 249 Fed. App'x 972, 973 (4th Cir. 2007) (citing Raines v. United States, 423 F.2d 529, 529-30 (4th Cir. 1970)). The Court's has "wide discretion" in this regard. Id. (citation omitted).

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Smith has not met this standard. Accordingly, a certificate of appealability will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to Smith and counsel of record.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Date: March 23, 2023
Richmond, Virginia